IN THE SUPREME COURT OF NORTH CAROLINA

No. 131A14

FILED 6 NOVEMBER 2015

MORNINGSTAR MARINAS/EATON FERRY, LLC,
Petitioner

           v.

WARREN COUNTY, NORTH CAROLINA and KEN KRULIK, WARREN COUNTY PLANNING AND ZONING ADMINISTRATOR, in his official capacity, Respondents

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 755 S.E.2d 75 (2014), affirming an order entered on 13 September 2012 by Judge Robert H. Hobgood in Superior Court, Warren County. Heard in the Supreme Court on 16 February 2015.

> *Robinson Bradshaw & Hinson, P.A., by John H. Carmichael, for petitioner-appellee.*
>
> *Turrentine Law Firm, PLLC, by Karlene S. Turrentine, for respondent-appellants.*

JACKSON, Justice.

In this case we consider whether a zoning officer may refuse to transmit an appeal from his own zoning determination to the county board of adjustment for its review. We conclude that a zoning officer does not have this authority and therefore that the Superior Court, Warren County, properly entered an order compelling respondents to place petitioner's appeal on the agenda of the Warren County Board of Adjustment (the Board).

Morningstar Marinas (petitioner) owns land abutting Lake Gaston in Warren County, where it operates a commercial marina known as Eaton Ferry. Petitioner's property is zoned for business development pursuant to the Warren County Zoning Ordinance (the Ordinance). East Oaks, LLC (East Oaks) owns land approximately 145 feet away, across a small cove. Pursuant to the Ordinance, 8.5 acres of that property are zoned as residential and 1.91 acres are zoned for commercial use. The commercial portion of the property is improved with a boat storage building and a parking lot.

In April 2011, East Oaks filed a petition seeking a conditional use permit to develop a townhouse community (the Townhouse Project) on the residential portion of the property. The site plan for the Townhouse Project showed a proposed access easement for a driveway (the Drive) connecting the boat storage building on the commercial portion of the property to a boat launch area on Lake Gaston located on the residential portion of the property. The Drive was to be utilized to transport boats from the boat storage facility to the boat slips and launching area on the residential property.

On 21 April 2011, before the Board had an opportunity to rule on the petition, Warren County Planning and Zoning Administrator Ken Krulik issued a formal determination concluding that townhouses were a permitted use in the subject residential district and therefore, a conditional use permit was not required. As a

result, East Oaks withdrew its application for a conditional use permit and obtained a zoning permit to develop the townhouses.

Petitioner appealed Krulik's 21 April formal determination to the Board and argued that the Townhouse Project did not constitute a permitted use in the East Oaks residential property pursuant to the Ordinance. As Krulik's formal determination did not specifically address the Drive portion of the site plan, petitioner wrote Krulik a letter requesting that he issue a formal determination pursuant to the Ordinance regarding whether the Drive constituted a commercial use of the East Oaks residential property in violation of the Ordinance. Krulik responded by e-mail that he would not make a determination on the Drive, explaining that it was "not a relevant issue to [his] determination on townhouses as a permitted use or issuing the zoning permit."

When the Board heard petitioner's appeal in August 2011, it overturned Krulik's interpretation of the Ordinance and revoked the zoning permit previously issued to East Oaks. On 12 September, East Oaks successfully petitioned the superior court for a writ of certiorari to review the Board's order. On 14 October 2011, East Oaks and Warren County entered into a consent order, approved by the court, in which East Oaks and Warren County agreed that the zoning permit issued based upon Krulik's interpretation of the Ordinance would be reinstated, thereby allowing East Oaks to continue the Townhouse Project. The consent order, to which petitioner

was not a party, also stated the trial court's conclusions of law that "Morningstar is not a 'person aggrieved' pursuant to N.C. Gen. Stat. §153A-345(b)" and that the Board "had no jurisdiction or authority to hear the appeal of Morningstar."

Meanwhile, on 7 October 2011, petitioner filed its first petition for writ of mandamus with the Superior Court, Warren County, in which it requested that the court compel Krulik to issue a formal determination regarding the Drive. Warren County and Krulik (respondents) filed an answer in which they contended that petitioner lacked standing to appeal and to petition for the writ of mandamus. Respondents also attached a determination letter from Krulik dated 16 November 2011, which stated in pertinent part:

> While I did not make a specific determination as to whether the use of the concrete drive/easement constitutes a commercial use of the East Oaks Property in violation of the Ordinance, my issuance of the East Oaks' zoning permit . . . necessarily required that I determine the submitted use of the entire property covered by the permit is not restricted by the Warren County Zoning Ordinance.

> The drive is shown as a '"20 [foot] wide private access easement" on East Oaks' development plans. Warren County's Ordinance does not specifically regulate easements—whether or not they cross varying zoning jurisdictions . . . [T]o my knowledge, there has been no attempt by Warren County to regulate such easements through its zoning regulations.

In light of Krulik's determination regarding the Drive, petitioner voluntarily dismissed its mandamus action without prejudice and on 14 December 2011, noticed its appeal to the Board from Krulik's 16 November determination. Petitioner again

asserted that "the Drive constitutes a commercial use of the East Oaks Property, which is zoned Residential District, in violation of the Ordinance."

In January 2012, the county attorney informed petitioner that she had advised Krulik not to place the December appeal from Krulik's November 2011 determination on the Board's agenda because, *inter alia*, the Board "has no authority or jurisdiction to hear an appeal by [petitioner] because East Oaks' permit issue has been settled by" the 14 October 2011 consent order between East Oaks and Warren County.

Petitioner filed another petition for writ of mandamus in Superior Court, Warren County, requesting that the court compel respondents to place the 14 December 2011 appeal on the Board's next available agenda for a hearing. Petitioner asserted that the consent order, to which it was not a party and which dealt with a separate issue, did not concern the subject of the instant appeal, which involved the Drive. Respondents again argued in their response to the petition that "Petitioner-Morningstar was neither an aggrieved party to the 'Prior Action' nor an aggrieved party to this action . . . . As such Petitioner-Morningstar has no standing to appeal the actions of the Planning and Zoning Administrator, nor to bring this action for mandamus."

On 13 September 2012, the court granted the petition and issued a writ of mandamus ordering respondents to place the appeal on the Board's agenda for a hearing on the merits. The court added that its order "only direct[ed] that a hearing

be conducted by the [Board] but [did] not direct that Board concerning the merits of the case." Respondents appealed the order to the Court of Appeals, which affirmed the trial court's order in a divided opinion. *Morningstar Marinas/Eaton Ferry, LLC v. Warren County*, ___ N.C. App. ___, 755 S.E.2d 75 (2014).

Notwithstanding respondents' contention that petitioner lacked standing, the majority determined that Krulik had a mandatory statutory duty to transmit petitioner's appeal to the Board pursuant to section 153A-345, and that "the existence—or nonexistence—of standing is a legal determination that must be made by the [Board]." *Id.* at ___, 755 S.E.2d at 78. The majority further concluded that petitioner had complied with the requirements for taking an appeal as set forth in the Ordinance and that petitioner thus had a right to have its appeal placed on the Board's agenda. *Id.* at ___, 755 S.E.2d at 79. In addition, the majority determined that "mandamus was [petitioner's] only available remedy." *Id.* at ___, 755 S.E.2d at 80. Accordingly, the majority held that the trial court did not err by granting the petition for writ of mandamus. *Id.* at ___, 755 S.E.2d at 81.

The dissent disagreed with the majority that section 153A-345 required Krulik to transmit the appeal to the Board and for that reason would have reversed the trial court's order. Relying upon *Smith v. Forsyth County Board of Adjustment*, 186 N.C. App. 651, 652 S.E.2d 355 (2007), the dissent asserted that a party must first demonstrate that it has standing to appeal pursuant to section 153A-345 in order for

the statute to compel a zoning officer to transmit an appeal to the Board. *Id*. at ___, 755 S.E.2d at 82. (Elmore, J., dissenting). According to the dissent, *Smith* suggests that a zoning officer "is vested with authority to refuse to transmit an appeal to the [Board] if the appealing party's application [does not allege any] special damages" demonstrating that it is "aggrieved" pursuant to section 153A-354. *Id*. at ___, 755 S.E.2d at 82. Therefore, the dissenting judge believed that a zoning officer "may unilaterally dismiss the appeal for want of standing." *Id*. at ___, 755 S.E.2d at 82. The dissent concluded that because petitioner neglected to allege special damages in its appeal from the 16 November determination, petitioner failed to show that it was "aggrieved" and thus had no standing to appeal to the Board. Id. at ___, 755 S.E.2d at 82. For that reason the dissent would have held that petitioner had not met the first requirement for issuance of a writ of mandamus that the party seeking relief "demonstrate a clear legal right to the act requested." *In re T.H.T.*, 362 N.C. 446, 453, 665 S.E.2d 54, 59 (2008) (citation omitted). Nonetheless, the dissenting judge "concur[red] in all other aspects of the majority opinion."[1] *Id. at* ___ N.C. App. at ___, 755 S.E.2d at 81. Respondents filed their appeal of right based on the dissenting opinion.

---

[1] Accordingly, the other holding by the Court of Appeals dealing with attorney's fees is not before this Court on appeal. The Court denied respondents' petition for discretionary review of that and other issues.

"The writ of mandamus is an order from a court of competent jurisdiction to a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law." *Sutton v. Figgatt*, 280 N.C. 89, 93, 185 S.E.2d 97, 99 (1971) (citations omitted). A writ of mandamus is an appropriate remedy when the following circumstances are present: (1) the party seeking relief has "a clear legal right to the act requested"; (2) the respondent has "a legal duty to perform the act requested"; (3) performance of the act at issue is "ministerial in nature and [does] not involve the exercise of discretion"; (4) the respondent did not perform the act requested and the time for performance of the act has expired; and (5) no "alternative, legally adequate remedy" is available. *In re T.H.T.*, 362 N.C. at 453-54, 665 S.E.2d at 59 (citations omitted).

Respondents argue based upon the dissent that the trial court erred by granting petitioner's request for writ of mandamus because petitioner lacks standing as a party "aggrieved" to appeal Krulik's 16 November determination; therefore petitioner does not have "a clear legal right" to have its appeal placed on the Board's agenda. We agree with the Court of Appeals' conclusion that Krulik is bound by statute to transmit petitioner's appeal to the Board and that the legal determination whether petitioner has standing falls within the province of the Board. As a result, we hold that petitioner has a clear legal right to have its appeal transmitted to the Board and placed on the agenda, and we affirm the Court of Appeals' determination that mandamus was proper. In reaching this conclusion, we do not decide whether

petitioner, in fact, has standing because that decision first must be made by the Board of Adjustment.

Subsection 153A-345(b)[2] of the North Carolina General Statutes, which governed county board of adjustment appeals at all times relevant to this matter, states that

> the board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of that ordinance. Any person aggrieved or any officer, department, board, or bureau of the county may take an appeal. Appeals shall be taken within times prescribed by the board of adjustment by general rule, by filing with the officer from whom the appeal is taken and with the board of adjustment a notice of appeal, specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which action appealed from was taken.

---

[2] This statute was repealed by the General Assembly, effective 1 October 2013, but was in effect during the relevant time period of the present case. N.C.G.S. § 160A-388 now governs appeals to county boards of adjustment. *See* N.C.G.S. § 153A-345.1 (2013) (making the provisions of section 160A-388 applicable to counties). Significantly, the revised statute requires that

> [t]he official who made the decision shall transmit to the board all documents and exhibits constituting the record upon which the action appealed from is taken. The official shall also provide a copy of the record to the appellant and to the owner of the property that is the subject of the appeal if the appellant is not the owner.

*Id.* § 160A-388(b1)(5) (2013). In addition, the revisions now mandate that the appeal itself be filed "with the [county] clerk," *id.* § 160A-388(b1)(1), a procedure that is more analogous to notices of appeal filed pursuant to both Chapter 150B and in the General Court of Justice. *See* N.C. R. App. P. 3(a).

N.C.G.S. § 153A-345(b) (2012). "It is well established 'that the word "shall" is generally imperative or mandatory'" when used in our statutes. *Multiple Claimants v. N.C. Dep't of Health & Human Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (quoting *State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979)). Our reading of subsection 153A-345(b) does not deviate from this precedent. The statute specifically states that "[t]he officer from whom the appeal is taken *shall forthwith transmit to the board* all the papers constituting the record upon which action appealed from was taken." N.C.G.S. § 153A-345(b) (emphasis added). The statute does not establish any exception or other circumstances in which the officer may decline to transmit the appropriate materials. Accordingly, when Morningstar appealed Krulik's 16 November determination in its 14 December letter to Krulik, it was mandatory that Krulik immediately transmit the appeal to the Board.

Although subsection 153A-345(b) clearly includes the standing requirement that only a "person aggrieved . . . may take an appeal," neither the statute nor the Ordinance includes any language suggesting that this determination is to be made by a zoning officer. We have stated that, "[i]n general, the zoning administrator is a purely administrative or ministerial agent following the literal provisions of the ordinance." *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 507, 434 S.E.2d 604, 612 (1993) (citation omitted). Consistent with subsection 153A-345(b), the Ordinance states that "[a]ppeals from the enforcement and interpretation of this ordinance . . . shall be filed with the Zoning Administrator, who shall transmit all

such records to the Board of Adjustment." Warren County, N.C., Zoning Ordinance § IX-4 (2010). The Ordinance further indicates that "[t]he Board of Adjustment shall fix a reasonable time, not to exceed 30 days, for the hearing of the appeal." *Id.* The plain language in both the statute and the Ordinance mandates that the zoning officer forward the documents constituting the record to the Board—an act that is ministerial in nature, involving no discretion. Conversely, "[w]hether a party has standing is a question of law." *McCrann v. Pinehurst LLC*, 225 N.C. App. 368, 372, 737 S.E.2d 771, 775, *disc. rev. denied*, 366 N.C. 593, 743 S.E.2d 221 (2013). In light of the ministerial role of the zoning officer in the appeal process, as designated and required by subsection 153A-345(b), we conclude that these officers are not vested with authority to dismiss or foreclose an appeal based upon their legal determination that the appealing party lacks standing. Moreover, we do not believe the statute was intended to permit zoning officers to single-handedly block appeals from their own zoning determinations. The county board of adjustment, not the zoning officer, determines the fate of such an appeal.

Our decision does not address the issue of whether petitioner in fact has standing, nor does it allow petitioner to evade the standing requirement. Although subsection 153A-345(b) requires petitioner to demonstrate to the Board that it is an aggrieved party before its challenge can be heard on the merits, in any event, petitioner has a clear legal right to have its appeal transmitted to the Board. Respondents do not dispute that petitioner complied with the requirements for taking

an appeal pursuant to both subsection 153A-345(b) and the Ordinance. Subsection 153A-345(b) requires a zoning officer to transmit an appeal to the applicable board of adjustment, without consideration of that zoning officer's judgment regarding whether or not the petitioner possesses standing to appeal. By refusing to place petitioner's appeal on the Board's agenda, Krulik failed to comply with this statutory mandate.

Accordingly, as to the issue on direct appeal based upon the dissenting opinion, we affirm the Court of Appeals' determination that the trial court did not err by granting mandamus and by ordering respondents to place petitioner's appeal on the Board's agenda. This case is remanded to the Court of Appeals for further remand to the trial court for any additional proceedings necessitated by and consistent with this opinion.

AFFIRMED AND REMANDED.